## No. 24-2295

## GEORGETTE SHERMAN,

### APPELLANT,

### V.

## DOUGLAS A. COLLINS, SECRETARY OF VETERANS AFFAIRS,

### APPELLEE.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI, WESTERN DIVISION

BEFORE THE HONORABLE DAVID GREGORY KAYS, U.S. DISTRICT JUDGE

# BRIEF FOR APPELLEE

JEFFREY P. RAY
ACTING UNITED STATES ATTORNEY &
CIVIL DIVISION CHIEF

UNITED STATES ATTORNEY'S OFFICE FOR
THE WESTERN DISTRICT OF MISSOURI

CHARLES E. WHITTAKER COURTHOUSE
400 EAST NINTH STREET, SUITE 5510
KANSAS CITY, MO 64106-2149

ATTORNEYS FOR APPELLEE
DOUGLAS A. COLLINS, IN HIS
OFFICIAL CAPACITY AS SECRETARY
OF VETERANS AFFAIRS

# I. Summary of the case

Appellant herein and plaintiff below, Georgette Sherman ("Sherman"), seeks damages based on allegations that she was discriminated and retaliated against by her employer, the Department of Veterans Affairs ("VA"). The district court below,[1] in an unreported decision,[2] granted the VA's motion for summary judgment on all issues raised by Sherman, finding that: (1) Sherman failed to exhaust any claim of constructive discharge, (2) Sherman failed to adduce any evidence of sex-based discrimination or harassment, (3) Sherman failed to establish a *prima facie* case of either race discrimination or retaliation, and (4) Sherman failed to establish an objectively hostile work environment based on either race or retaliation. Sherman appeals the final judgment entered based on the district court's ruling.

This appeal does not present unusual or unresolved issues regarding substantive federal employment discrimination law. Moreover, this appeal does not involve a matter of first impression in this Circuit, nor raise significant legal matters wherein there is a split of authority among the federal Circuits. As such, the VA is prepared to waive oral argument from the parties.

---

[1] The Honorable David Gregory Kays, U.S. District Judge, United States District Court for the Western District of Missouri.

[2] *Sherman v. McDonough*, No. 21-00924-CV-W-DGK, 2024 WL 1748023, slip op. (W.D. Mo. Apr. 23, 2024).

# II.   Table of contents

Page

I.     Summary of the case...................................................................i

II.    Table of contents.....................................................................ii

III.   Table of authorities ..............................................................iv

    A.    Cases.......................................................................iv

    B.    Statutes and other authorities ............................................vi

IV.    Jurisdictional statement ...........................................................1

V.     Statement of the issues...........................................................3

VI.    Statement of the case .............................................................5

    A.    Facts.......................................................................5

        1.    Overview.........................................................5

        2.    Sherman's 2020 EEO activity......................................6

        3.    Sherman's job performance as Supervisory MSA.....................7

        4.    Sherman's detail................................................10

        5.    Sherman's allegations regarding AWOL charges. ..................12

        6.    Sherman's "privacy" complaint..................................12

        7.    Sherman's promotion to Inventory Manager and
            September 30, 2021 retirement...................................13

    B.    Procedural history and relevant rulings............................14

VII.   Summary of the argument ........................................................17

# II.   Table of contents

Page

VIII.  Argument ..................................................................18

    A.      Standard of appellate review for Rule 56 motions............................18

    B.      The district court ruled properly and did not err in granting the VA's motion for summary judgment. ............................................24

          1.      The district court ruled properly and did not err in granting summary judgment to the VA on Sherman's claim of a constructive discharge in that:. .................................................25

                    a.      Sherman failed to exhaust administrative remedies for any constructive discharge claim..............................25

                    b.      Alternatively, the summary judgment record does not establish a legally viable claim of a constructive discharge. ...................................29

          2.      The district court ruled properly and did not err in granting summary judgment to the VA on Sherman's claims of alleged discrete employment acts of race discrimination and retaliation in that: ......................................32

                    a.      The summary judgment record fails to establish a prima facie case of either race discrimination or retaliation ....................................................32

                      b.      Alternatively, the summary judgment record fails to establish a trialworthy issue of pretext. ..........................44

          3.      The district court ruled properly and did not err in granting summary judgment to the VA on Sherman's claims of a hostile work environment based on race inasmuch as the summary judgment record fails to establish an objectively hostile work environment..................47

## II.   Table of contents

Page

IX.    Conclusion ....................................................................................51

X.     Certificate of compliance.............................................................52

XI.    Certification of electronic filing of the BRIEF FOR APPELLEE........................53

XII.   Certification of mailing of paper copies of the BRIEF FOR APPELLEE  ..........54

# III. Table of authorities

## A. Cases

Page(s)

*Anda v. Wickes Furn. Co.*, 517 F.3d 526 (8th Cir. 2008) .....................................49

*Anderson v. Block*, 807 F.2d 145 (8th Cir. 1986) ................................................26

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505 (1986) ...............18

*Bennett v. Nucor Corp.*, 656 F.3d 802 (8th Cir. 2011) .........................................24

*Blomker v. Jewell*, 831 F.3d 1051 (8th Cir. 2016) ...............................................48

*Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813 (8th Cir. 2010) ...................38

*Buettner v. Arch Coal Sales, Inc.*, 216 F.3d 707 (8th Cir. 2000) ......................4, 46

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53,
126 S.Ct. 2405 (2006) ................................................................ 3, 36-37, 40

*Carpenter v. Con-Way Cent. Exp., Inc.*, 481 F.3d 611 (8th Cir. 2007) ...............29

*Cole v. Grp. Health Plan, Inc.*, 105 F.4th 1110 (8th Cir. 2024) ......................3, 35

*Collins v. Metro. Life Ins. Co.*, 117 F.4th 1010 (8th Cir. 2024) ...........................44

*Collins v. Union Pac. R.R. Co.*, 108 F.4th 1049 (8th Cir. 2024) ..........................18

*Cosby v. Steak N Shake*, 804 F.3d 1242 (8th Cir. 2015) ..................................3, 30

*Denn v. CSL Plasma, Inc.*, 816 F.3d 1027 (8th Cir. 2016) ...................................18

*Far E. Aluminium Works Co. v. Viracon, Inc.*, 27 F.4th 1361 (8th Cir. 2022) ......24

*Floyd v. State of Mo. Dept. of Soc. Servs., Div. of Family Servs.*,
188 F.3d 932 (8th Cir. 1999) .......................................................................44

*Grant v. City of Blythesville, Ark.*, 841 F.3d 767 (8th Cir. 2016) ........................41

*Green v. Brennan*, 578 U.S. 547, 136 S.Ct. 1769 (2016) ......................................29

*Guimaraes v. SuperValu, Inc.*, 674 F.3d 962 (8th Cir. 2012) ...........................4, 45

*Hales v. Casey's Marketing Co.*, 886 F.3d 730 (8th Cir. 2018) .......................4, 48

*Heisler v. Nationwide Mut. Ins. Co.*, 931 F.3d 786 (8th Cir. 2019) ..........16, 33, 47

*Henson v. Union Pac. R.R. Co.*, 3 F.4th 1075 (8th Cir. 2021) ..............3, 15, 26, 28

*Jackman v. Fifth Jud. Dist. Dept. of Corr. Servs*, 728 F.3d 800
   (8th Cir. 2013) ...............................................................................49

*Johnson v. Westinghouse Air Brake Techs. Corp.*, 104 F.4th 674
   (8th Cir. 2024) ...............................................................................34

*Jones v. Cargill, Inc.*, 490 F.Supp.2d 978 (N.D. Iowa 2007) ...............................42

*Lacroix v. Sears, Roebuck, and Co.*, 240 F.3d 688 (8th Cir. 2001) ......................45

*Liles v. C.S. McCrossan, Inc.*, 851 F.3d 810 (8th Cir. 2017) ...........................4, 49

*Lindell v. McCaughtry*, 2003 WL 23192721, slip op.
   (W.D. Wis. Oct. 27, 2003) ...........................................................20

*Lissick v. Andersen Corp.*, 996 F.3d 876 (8th Cir. 2021) ........................................2

*Lors v. Dean,* 595 F.3d 831 (8th Cir. 2010) ....................................................4, 45

*Macklin v. FMC Transp., Inc.*, 815 F.3d 425 (8th Cir. 2016) ...........................3, 43

*Mahler v. First Dakota Title Ltd. P'ship*, 931 F.3d 799 (8th Cir. 2019) ..............48

*Mayorga v. Marsden Bldg. Maint. LLC*, 55 F.4th 1155 (8th Cir. 2022)................21

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973) ....*passim*

*McNary v. Schreiber Foods, Inc.,* 535 F.3d 765 (8th Cir. 2008) ...........................45

*Michael v. Trevena*, 899 F.3d 528 (8th Cir. 2018) ................................................18

*Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 144 S.Ct. 967 (2024) ................................................................................. 3, 35-37, 40

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061 (2002) .....26

*Nelson v. Lake Elmo Bank*, 75 F.4th 932 (8th Cir. 2023) ......................................44

*O'Brien v. Dept. of Agriculture*, 532 F.3d 805 (8th Cir. 2008) ..........................3, 30

*Parker v. United States Dept. of Agric.*, 129 F.4th 1104 (8th Cir. 2025) ........34, 40

*Pennsylvania State Police v. Suders*, 542 U.S. 129, 124 S.Ct. 2342 (2004) .....3, 31

*Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847 (8th Cir. 2012) .....................27

*Rusness v. Becker Cnty., Minnesota*, 31 F.4th 606 (8th Cir. 2022) .....................18

*Sessler v. City of Davenport, Iowa*, 102 F.4th 876 (8th Cir. 2024) .....................37

*Slayden v. Ctr. for Behav. Med.*, 53 F.4th 464 (8th Cir. 2022) ................... 3, 27-28

*St. Mary's Hon. Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742 (1993) ...................33

*Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) (*en banc*) ......18, 46

*Twymon v. Wells Fargo & Co.*, 462 F.3d 925 (8th Cir. 2006) ...............................33

*Watson v. O'Neill*, 365 F.3d 609 (8th Cir. 2004) ................................................25

*Weatherly v. Ford Motor Co.*, 994 F.3d 940 (8th Cir. 2021) ...............................24

*Wedow v. City of Kansas City, Mo.*, 442 F.3d 661 (8th Cir. 2006) .....................26

*Wilson v. Miller*, 821 F.3d 963 (8th Cir. 2016) ...................................................40

## B. Statutes and other authorities

Page(s)

28 U.S.C. § 1291 ................................................................................2

28 U.S.C. § 1294 ................................................................................2

28 U.S.C. § 1331 ................................................................................1

28 U.S.C. § 1346 ................................................................................1

28 U.S.C. § 2017 ................................................................................2

29 C.F.R § 1614.105 ........................................................................25

29 C.F.R § 1614.106 ........................................................................25

42 U.S.C. § 2000e-16 .......................................................................25

8TH CIR. R. APP. P. 28A ...............................................1, 52, 53, 54

FED. R. APP. P. 4..............................................................................2

FED. R. APP. P. 25...........................................................................54

FED. R. APP. P. 28...........................................................................52

FED. R. APP. P. 32...........................................................................52

FED. R. APP. P. 43.............................................................................3

FED. R. CIV. P. 12...........................................................................35

FED. R. CIV. P. 56.....................................................................*passim*

W.D. MO. LOC. R. 56.1 ..................................................................19

# IV. Jurisdictional statement

Sherman initiated this employment discrimination case on December 21, 2021, by filing a COMPLAINT AND JURY DEMAND against named defendant below and the initial appellee herein Denis McDonough, in his official capacity as the Secretary of Veterans Affairs,[3] as well as against the United States of America as a separately named defendant. App. at 1-19, R.Doc. 1, at 1-19.[4] In four counts, Sherman's COMPLAINT asserted claims of disparate treatment discrimination, hostile work environment, retaliation, and constructive discharge pursuant Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, *et seq*. ("Title VII"). App. at 1-19, R.Doc. 1, at 1-19. Inasmuch as the COMPLAINT asserted claims against the United States and a federal officer under federal statutes, the district court had ostensible jurisdiction. 28 U.S.C. §§ 1331, 1346(b)(1).

---

[3] Because Sherman's allegations arose out of her federal employment with the VA, the lone proper defendant was "the head of the department, agency, or unit, as appropriate" employing Sherman during the alleged discrimination. 42 U.S.C. § 2000e-16(c). When the COMPLAINT was filed (and when this appeal was initiated), Mr. McDonough was the Secretary of Veterans Affairs and was named as a defendant. With the change in presidential administrations, however, Mr. McDonough resigned, and Douglas A. Collins was confirmed as the 12th Secretary of Veterans Affairs on February 5, 2025. Pursuant to FED. R. APP. P. 43(c)(2), "[w]hen a public officer who is a party to an appeal [resigns], the action does not abate [and the] public officer's successor is automatically substituted as a party."

[4] Citations to documents appearing in the district court's CM/ECF docket and the consecutively paginated APPENDIX filed with the Court by Sherman are referenced herein with parallel citations to both sources (*e.g.*, "App. at —, R.Doc. —"). 8TH CIR. R. APP. P. 28A(j).

On December 29, 2023, the VA[5] sought summary judgment under FED. R. CIV. P. 56 on all claims raised in Sherman's COMPLAINT. App. at 66-92, R.Doc. 55, at 1-33. Following briefing from the parties, the district court entered an order on April 23, 2024, granting summary judgment to the VA. App. at 803-18, R.Doc. 68, at 1-16. A JUDGMENT IN A CIVIL ACTION thereafter was entered by the district court on May 1, 2024. App. at 819, R.Doc. 69, at 1.

Sherman had 60 days to file a notice of appeal from entry of the final judgment (or on or before June 30, 2024). 28 U.S.C. § 2017(b)(3); FED. R. APP. P. 4(a)(1)(B)(iii). On June 24, 2024, Sherman timely filed her NOTICE OF APPEAL investing this Court with appellate jurisdiction under 28 U.S.C. §§ 1291, 1294(1). App. at 820-21, R.Doc. 70, at 1-2.

---

[5] The United States sought a separate dismissal on December 29, 2023. App. 189-91, R.Doc. 56, at 1-3. In an order entered on January 19, 2024 (not included in the APPENDIX), the district court granted the United States a dismissal. The district court's ruling on the United States' dismissal motion has not been challenged or addressed by Sherman in her BRIEF OF APPELLANT. Accordingly, any questions concerning the propriety of the United States' dismissal will be deemed abandoned and will not be further addressed herein. *Cf. Lissick v. Andersen Corp.*, 996 F.3d 876, 881 (8th Cir. 2021) ("Claims not raised in an opening brief are deemed waived.").

# V. Statement of the issues

**A.**     **The district court ruled properly and did not err in entering summary judgment in favor of the VA on Sherman's claim of constructive discharge in that the district court correctly found that Sherman did not administratively exhaust the claim**

*Henson v. Union Pac. R.R. Co.*, 3 F.4th 1075 (8th Cir. 2021)

*Slayden v. Ctr. for Behav. Med.*, 53 F.4th 464 (8th Cir. 2022)

**B.**     **Alternatively, the district court ruled properly and did not err in entering summary judgment in favor of the VA on Sherman's claim of constructive discharge in that the district court correctly found that Sherman did not establish an intolerable workplace**

*O'Brien v. Dept. of Agriculture*, 532 F.3d 805 (8th Cir. 2008)

*Cosby v. Steak N Shake*, 804 F.3d 1242 (8th Cir. 2015)

*Pennsylvania State Police v. Suders*, 542 U.S. 129, 124 S.Ct. 2342 (2004)

**C.**     **The district court ruled properly and did not err in entering summary judgment in favor of the VA on Sherman's claims of discrete acts of race discrimination and retaliation in that the district court correctly found that Sherman did not establish *prima facie* cases of either race discrimination or retaliation**

*Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 144 S.Ct. 967 (2024)

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405 (2006)

*Macklin v. FMC Transp., Inc.*, 815 F.3d 425 (8th Cir. 2016)

*Cole v. Grp. Health Plan, Inc.*, 105 F.4th 1110 (8th Cir. 2024)

**D.**  **Alternatively, the district court ruled properly and did not err in entering summary judgment in favor of the VA on Sherman's claims of discrete acts of race discrimination and retaliation in that the district court correctly found that Sherman did not establish a trialworthy issue of pretext**

*Lors v. Dean,* 595 F.3d 831 (8th Cir. 2010)

*Guimaraes v. SuperValu, Inc.*, 674 F.3d 962 (8th Cir. 2012)

*Buettner v. Arch Coal Sales, Inc.*, 216 F.3d 707 (8th Cir. 2000)

**E.**  **The district court ruled properly and did not err in entering summary judgment in favor of the VA on Sherman's claim of actionable harassment based on either race or retaliation in that the district court correctly found that Sherman could not establish an objectively hostile work environment**

*Hales v. Casey's Marketing Co.*, 886 F.3d 730 (8th Cir. 2018)

*Liles v. C.S. McCrossan, Inc.*, 851 F.3d 810 (8th Cir. 2017)

# VI. Statement of the case

## A. Facts

## 1. Overview

Sherman first began working at the Kansas City VA Medical Center ("KCVAMC") in 2005 as a radiology technologist. App. at 94, R.Doc. 55-1, at 13:6-19. Later, in approximately 2009, Sherman was promoted to a supervisor of the medical support staff in the Radiology Department. App. at 94-95, R.Doc. 55-1, at 13:24-25, 14:1-25. In September 2018, Sherman changed jobs and began working as the Supervisory Medical Support Assistant ("Supervisory MSA") in the Office of Community Care ("OCC")[6] at the KCVAMC. App. at 121, R.Doc. 55-4, at 1. A Supervisory MSA was a GS-8 level position (Sherman had been at a GS-7 level). App. at 121, R.Doc. 55-4, at 1.

The organizational chart for the OCC reflects that the Supervisory MSA reports to the Program Manager of the OCC. App. at 133, R.Doc. 55-6, at 1. During the relevant time, Angela Frey, Associate Chief Nurse, was the Program Manager over the OCC. App. at 125-26, R.Doc. 55-5, at 29:22-25, 30:1-13.

---

[6]     Within the VA, the OCC is responsible for processing and facilitating medical consults for veterans outside of the VA system. App. at 123, R.Doc. 55-5, at 20:25, 21:1-19. Such "outside" consults occur for a variety of reasons, including cases where the VA does not offer a form of specialty care, when veterans live a significant distance from a VA facility, or, in certain circumstances, when the VA has unusually long wait times. App. at 123, R.Doc. 55-5, at 20:25, 21:1-19.

## 2.  Sherman's 2020 EEO activity

Sherman's underlying litigation arises from two administrative complaints of employment discrimination that she filed with the VA in 2020, to wit:

(a)     Case Number 200J-0589-2020102637 filed on March 19, 2020 ("EEO Claim 1"), and

(b)     Case Number 200J-V115-2021100115 filed on December 3, 2020 ("EEO Claim 2").

App. at 110-17, R.Doc. 55-2, at 1-8; App. at 118-20, R.Doc. 55-3, at 1-3.[7]

In her EEO Claim 1, Sherman raised issues of alleged race discrimination and retaliation related to: (a) her February 21, 2020 detail out of the OCC, (b) a purported denial of sick and annual leave in March 2020, and (c) the institution of a Performance Plan for Sherman in November 2019 that Sherman contends was improperly executed. App. at 110-17, R.Doc. 55-2, at 1-8.  In EEO Claim 2, Sherman raised claims of race discrimination and retaliation based on allegedly degrading comments, excessive managerial oversight, a poor performance appraisal, Sherman's acceptance of an Inventory Manager position, and the purported "slow walking" of a privacy complaint made by Sherman. App. at 118-20, R.Doc. 55-3, at 1-3.

---

[7]     Sherman had filed an earlier administrative complaint of employment discrimination on June 20, 2019 in Case Number 200J-0589-2019103604. However, the claims involved in that administrative complaint are not included in Sherman's current litigation.  App. at 2-5, R.Doc. 1, at 2-5.

### 3. Sherman's job performance as Supervisory MSA

As the Supervisory MSA beginning in September of 2018, Sherman was responsible for oversight of the daily efficiencies of the MSAs and assistant MSAs within the OCC, which involved monitoring the consults coming into the OCC and the processing of the consults. App. 127-28, R.Doc. 55-5, at 37:25, 1-11.[8]

After Sherman began as a Supervisory MSA, Ms. Frey started receiving complaints from VA employees about Sherman's failure to complete and assist with time and leave duties. App. at 134-36, R.Doc. 55-7, at 1-3; App. at 137-46, R.Doc. 55-8, at 1-10. VA employees also reported that Sherman often cursed during staff huddles. App. at 134-36, R.Doc. 55-7, at 1-3. Throughout 2019 and into 2020, Ms. Frey began working with the HR department, including Denise Smith and Felicia Truong, seeking to address Sherman's performance issues. App. at 134-36, R.Doc. 55-7, at 1-3; App. at 137-46, R.Doc. 55-8, at 1-10; App. at 147-51, R.Doc. 55-9, at 1-5, App. at 152-56, R.Doc. 55-10, at 1-5], App. at 157-59, R.Doc. 55-11, at 1-3.

---

[8] In 2018, Congress passed the VA Mission Act, Pub. L. No. 115-182, 132 Stat. 1393, which went into effect on June 1, 2019. App. at 123, R.Doc. 55-5, at 20:11-24. The Act increased benefits for veterans by expanding opportunities for veterans to access community health care outside of the VA system. App. at 123, R.Doc. 55-5, at 20:11-24. The passage of the Mission Act resulted in a significant change for the OCC and led to a sharp increase in the number of outside consults and OCC referrals. App. at 124, R.Doc. 55-5, at 23:6-25, 24:1-5; App. at 129-30, R.Doc. 55-5, at 45:19-25, 46:1-2.

Ms. Frey raised numerous concerns about Sherman not fully understanding the OCC processes, Sherman declining OCC training opportunities, Sherman conveying incorrect information to external customers on multiple occasions, and Sherman failing to keep up with incoming emails. App. at 134-36, R.Doc. 55-7, at 1-3; App. at 137-46, R.Doc. 55-8, at 1-10. Ms. Frey also undertook a fact-finding investigation that disclosed Sherman had told MSAs not to enter veteran appointments[9] resulting in a significant increase in veterans having to wait over 30 days for outside consults. App. at 160-61, R.Doc. 55-12, at 1-2.

On November 8, 2019 Ms. Frey placed Sherman on a 90-day Performance Plan for fiscal year 2020. App. at 162-67, R.Doc. 55-13, at 1-6. Sherman signed the plan indicating her receipt that same day. App. at 162-67, R.Doc. 55-13, at 1-6. The Performance Plan set forth the key elements of the Supervisory MSA position [Leading Change, Leading People, Business Acumen, Building Coalitions, and Results Driven] and set forth benchmarks for Sherman to reach in order to be evaluated as either "fully successful" or "exceptional." App. at 162-67, R.Doc. 55-13, at 1-6.

Following the issuance of the Performance Plan, on January 7, 2020 Ms. Frey provided Sherman with a 45-day progress review, stating:

---

[9] Sherman believed that the task should be performed by nurses and not MSAs. App. at 103-04, R.Doc. 55-1, at 61:22-25, 62:1-18.

> Ms. Sherman lacks the understanding of the process
> changes that have been implemented at OCC. A best
> practice has not been submitted to the Chief. Ms.
> Sherman has not engaged in the AES action planning in
> OCC. Ms. Sherman has not exhibited facilitation of
> teamwork, cooperation or collaboration with the staff.
> Ms. Sherman has not demonstrated being personally
> accountable as she has not responded within 48 hours to
> routine administrative actions or leadership guidance.
> Ms. Sherman does not assure consistent supervisor
> coverage in her absence. Ms. Sherman often leaves T&L
> duties to others in the leadership team and does not
> maintain Acustaf. Ms. Sherman does not maintain access
> or superuser access to all programs used in OCC. Ms.
> Sherman does not effectively maintain good relationships
> with the internal leadership team and does not show
> initiative in building coalitions with external customers.
> Ms. Sherman has been assigned many aspects of the
> MISSION Act Implementation process in OCC with no
> results given. Ms. Sherman is the direct supervisor for the
> MSA's that affect the metrics we follow and has not
> given a plan or results for any efforts made to improve
> the metrics.

App. at 168-71, R.Doc. 55-14, at 1-4. Sherman refused to sign the review. App. at

168-71, R.Doc. 55-14, at 1-4. Consequently, the following day, Ms. Frey emailed

Sherman a copy of the interim review and advised Sherman to let her know "[i]f

you have questions or want to discuss improvements to become fully successful."

App. at 172, R.Doc. 55-15, at 1.

On January 31, 2020 Sherman was given an "unsuccessful" performance

appraisal by Ms. Frey. App. at 168-71, R.Doc. 55-14, at 1-4. In her notes

supporting the rating, Ms. Frey explained:

> Ms. Sherman has not met any standard for her
> performance plan. She has been in OCC for 14 months
> and has not been able to maintain the leadership skills
> necessary to be successful in her role. Ms. Sherman
> received her progress review and refused to discuss ways
> to improve her performance. No improvement has been
> observed.

App. at 168-71, R.Doc. 55-14, at 1-4.

## 4. Sherman's detail

Ms. Frey believed that her communications with Sherman began to
significantly deteriorate after the VA Mission Act was implemented in June 2019,
noting that:

> [The OCC] started feeling the full effects of the process
> changes by August, and it was overwhelming to Ms.
> Sherman. And as we were trying to communicate and get
> the processes, and adhere to the processes that were
> coming to us, to get care . . . we had a larger volume
> coming in, and to respond to all that, I think it became
> very difficult for her to keep up. And that's when her
> communication with, with me and the team deteriorated.

App. at 131, R.Doc. 55-5, at 100:8-25, 101:1-16. Ms. Frey further explained that
after the 45-day progress review was given to Sherman in early January of 2020,
Sherman told Ms. Frey that she would not communicate with her at all. App. at
132, R.Doc. 55-5, at 122:24-25, 123:1-15. At the VA, it is misconduct when an
employee refuses to communicate with his or her supervisor. App. at 132, R.Doc.
55-5, at 122:19-25, 123:1-4.

As per VA policy, Ms. Frey initiated a fact-finding investigation into the alleged misconduct of Sherman.  App. at 173, R.Doc. 55-16, at 1.  It is the "common practice" at the VA for employees who are allegedly engaged in ongoing[10] inappropriate conduct to be detailed to another position (and work unit) during a fact-finding investigation.  App. at 175-76, R.Doc. 55-17, at 2-3.

On February 21, 2020, Ms. Frey issued a memorandum to Sherman informing her that she was being detailed out of the OCC during the investigation into her alleged misconduct. App. at 173, R.Doc. 55-16, at 1.  Sherman was directed to report to Eddaliss Gonzalez-Ruiz, Associate Chief Nurse for Inpatient Care Services, for work assignments during her detail.  App. at 173, R.Doc. 55-16, at 1.  However, Ms. Frey's memorandum emphasized that Sherman's position title of record (Supervisory MSA) would remain the same and Sherman's pay and benefits would be unchanged during the detail.  App. at 173, R.Doc. 55-16, at 1.

When Sherman was leaving to report to her detail, she tried to take a laptop and documents, but Ms. Frey instructed her that the items needed to be left in the OCC. App. at 99, R.Doc. 55-5, at 44:6-25, 45:1-24. Sherman ended up being escorted out of the OCC by security. App. at 99, R.Doc. 55-5, at 44:6-25, 45:1-24.

---

[10]    Ms. Frey does not believe that after the 45-day progress review Sherman would even send her an email or respond to any email from Ms. Frey and, as a consequence, Ms. Frey had no effective way to communicate with Sherman. App. at 132, R.Doc. 55-5, at 123:4-15.

## 5. Sherman's allegations regarding AWOL charges

During the course of her detail, Sherman claims that, in March 2020, she was improperly charged with AWOL by Ms. Frey. App. at 178-82, R.Doc. 55-18, at 1-5. The issue arose after Sherman missed work on March 13, 16-20, 2020 but did not apply for leave for those dates until March 26, 2020. App. at 178-82, R.Doc. 55-18, at 1-5. On March 26, 2020, Ms. Frey emailed Sherman and informed her that her "leave requests [had] been approved." App. at 178-82, R.Doc. 55-18, at 1-5. Sherman subsequently acknowledged on March 31, 2020, that any errant AWOL designation had been corrected. App. at 178-82, R.Doc. 55-18, at 1-5. To that end, Sherman's official timesheets reflect that she was not charged with AWOL and that she was paid as appropriate for the relevant week. App. at 183-84, R.Doc. 55-19, at 1-2.

## 6. Sherman's "privacy" complaint

At some unspecified date, Sherman was notified by Denise Drummond, a VA Privacy Officer, that one of her co-workers – Brenda Hagan – had viewed Sherman's VA medical and military information records. App. at 104, R.Doc. 55-1, at 63:13-25, 64:1-25, 65-13. Ms. Drummond conducted an investigation that lasted a week or two and then issued a report containing her conclusion that there had been no violation of the Privacy Act. App. at 104, R.Doc. 55-1, at 63:13-25, 64:1-25, 65-13.

Sherman did not agree with the conclusion of Ms. Drummond's investigation. App. at 105, R.Doc. 55-1, at 66:4-25, 67:1-19. Ms. Drummond told Sherman that she could appeal the outcome. App. at 105, R.Doc. 55-1, at 66:4-25, 67:1-19. However, rather than appealing, Sherman "just got fed up and I just said, you know, I'm out of here" and decided to retire from the VA. App. at 105, R.Doc. 55-1, at 66:4-25, 67:1-19.

### 7. Sherman's promotion to Inventory Manager and September 30, 2021 retirement

In approximately August of 2020, Sherman successfully applied for an Inventory Manager position at the KCVAMC – a GS-9 position – because she wanted to advance her career. App. at 101, R.Doc. 55-1, at 52:4-25, 53:1. According to Sherman, she enjoyed her new position and "enjoyed the VA." App. at 101, R.Doc. 55-1, at 53:14-16. Sherman worked as an Inventory Manager until September 30, 2021, when she retired. App. at 108, R.Doc. 55-1, at 100:4-11.

Sherman's supervisors in her Inventory Management position were Mike Murphy, Chris Hollis, and Tim Pippin. App. at 103, R.Doc. 55-1, at 60:3-9. Sherman never had any issues with these supervisors. App. at 103, R.Doc. 55-1, at 60:3-9. Sherman did not interact "at all" with Ms. Frey at all after she took the Inventory Manager position. App. at 102, R.Doc. 55-1, at 57:1-14.

## B. Procedural history and relevant rulings

On December 21, 2021, Sherman filed her COMPLAINT with the district court, the operative pleading in this case. App. at 1-19, R.Doc. 1, at 1-19. On June 9, 2022, the VA filed its ANSWER. App. at 20-34, R.Doc. 9, at 1-15.

Following an extended period of discovery, on December 29, 2023, the VA filed a summary judgment motion on all claims raised in Sherman's COMPLAINT. App. at 60-92, R.Doc. 55, at 1-33. After complete briefing from the parties, the district court issued an order on April 23, 2024, granting summary judgment to the VA. App. at 803-18; R.Doc. 68, at 1-16.

In its summary judgment order, the district court noted that Sherman was alleging: (1) disparate treatment based on race and sex,[11] (2) a hostile work environment based on race, skin color, and national origin, (3) disparate treatment based on retaliation, and (4) constructive discharge based on race and retaliation. App. at 812, R.Doc. 68, at 10.

---

[11]     With regard to Sherman's claims regarding any sex discrimination, the district court noted that "[i]n the argument portion of her briefing, Sherman cites no evidence suggesting sex had anything to do with treatment at the [VA], nor does she reference sex discrimination." App. at 814, R.Doc. 68, at 12. As a result, the district court concluded that "Sherman essentially concedes by her silence that she cannot maintain a sex-based claim for discrimination or harassment." App. at 814, R.Doc. 68, at 12. As for national origin discrimination, neither Sherman's summary judgment pleading nor the district court's summary judgment order analyze or discuss such a claim. Indeed, in her deposition, Sherman noted that any national origin claim made by her merely related to her race. App. at 94, R.Doc. 55-1, at 11:1-12.

Turning initially to whether Sherman could pursue a constructive discharge claim, the district court noted such a claim was "a discrete act of discrimination or retaliation that must be explicitly raised through the administrative process to be exhausted." App. at 813, R.Doc. 68, at 11 (*citing Henson v. Union Pac. R.R. Co.*, 3 F.4th 1075, 1081–82 (8th Cir. 2021)). However, the district court found "Sherman made no claim of constructive discharge, or anything reasonably related to constructive discharge, during the administrative process." App. at 813, R.Doc. 68, at 11. As such, the district court concluded "Sherman failed to administratively exhaust any constructive discharge claim." App. at 813, R.Doc. 68, at 11.[12]

With respect to Sherman's claim of discrimination based on race or retaliation for discrete employment actions, the district court found that Sherman had no direct evidence of discrimination or retaliation and, as a result, her claims had to be analyzed under *McDonnell Douglas*. Applying that framework, the district court concluded Sherman could not satisfy two aspects of the *prima facie* test – identifying an adverse employment action and establishing circumstances giving rise to an inference of discrimination. App. at 813, R.Doc. 68, at 11.

---

[12] In the alternative, the district court additionally found that, even if exhaustion was not a bar, Sherman's constructive discharge claim would still fail inasmuch as Sherman presented no evidence "indicating that a reasonable person in Sherman's position would have found her work environment [after she was promoted to Inventory Manager in August of 2020] intolerable at the time she retired [in September of 2021]." App. at 814, R.Doc. 68, at 21.

Finally, with regard to Sherman's claim of a hostile work environment, the district court concluded that "there [was] insufficient evidence of a hostile working environment to survive summary judgment." App. at 817, R.Doc. 68, at 15. The district court more specifically found:

> Sherman claims that at times she was subjected to offensive comments based on her race. But the few comments she cites – such as her claim Frey told her she liked cream in her coffee or coffee in her cream – fall far, far short of creating a hostile working environment under Eighth Circuit caselaw. Sherman's claims that she was unfairly criticized, called out in meetings, and escorted out of the office in a demeaning fashion when she was detailed out of the OCC are similarly insufficient. Indeed, there does not appear to be a causal nexus between Sherman's race and the "harassment." What appears to be happening here is, at worst, a garden-variety example of a manager disliking an employee, nothing based on racial animus. And it is well-settled that, "[h]ostile treatment by a manager based on employee conduct and not motivated by any protected characteristic or conduct, even if unreasonable, does not amount to legally actionable type of discrimination."

App. at 818, R.Doc. 68, at 16 (*quoting*, *in part*, *Heisler v. Nationwide Mut. Ins. Co.*, 931 F.3d 786, 796 (8th Cir. 2019)).

# VII. Summary of the argument

The district court properly entered summary judgment in favor of the VA on all of the employment discrimination, harassment, retaliation, and constructive discharge claims asserted by Sherman.

With regard to Sherman's claim that he was subjected to discrete employment actions that were discriminatory and/or retaliatory, the district court properly determined that: (1) Woods failed to establish a *prima facie* case of actionable discrimination and retaliation, and in the alternative (2) Woods failed to adduce any evidence establishing that the VA stated reasons for its disputed employments were pretext.

With regard to Woods' claims of a hostile work environment, the district court properly concluded that Woods failed to establish that the complained of conduct permeated his work workplace and/or altered the terms and condition of his employment with the VA. Finally, the district court properly determined that Sherman's claim of a constructive discharge had to be dismiss because Sherman had failed administrative remedies.

# VIII.  Argument

## A.   Standard of appellate review for Rule 56 motions

This Court reviews grants of summary judgment *de novo*. *Collins v. Union Pac. R.R. Co.*, 108 F.4th 1049, 1052 (8th Cir. 2024).  As in other litigation, in cases involving claims of employment discrimination,[13] summary judgment is to be rendered if a "movant shows that there [are] no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  And, while the Court must view the facts in the light most favorable to the party opposing summary judgment, such a rule "does not mean [the Court is] bound to credit the [non-moving party's] version of events, come what may." *Michael v. Trevena*, 899 F.3d 528, 532 (8th Cir. 2018).  Instead, parties opposing summary judgment must "set forth specific facts in the record showing that there is a genuine issue for trial."  *Denn v. CSL Plasma, Inc.*, 816 F.3d 1027, 1032 (8th Cir. 2016).  And while a party may oppose summary judgment by establishing factual disagreements, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment."  *Rusness v. Becker Cnty., Minnesota*, 31 F.4th 606, 614 (8th Cir. 2022) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986)).

---

[13]    "There is no 'discrimination case exception' to the application of summary judgment." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (*en banc*).

In her BRIEF OF APPELLANT, at 35, Sherman argues that the district court utilized the wrong standard for determining summary judgment in this case. However, Sherman identifies no improper legal citation or misstatement of precedent in the district court's discussion of the proper summary judgment standard. App. 803-04, R.Doc. 68, at 1-2. Instead, Sherman objects that the district court engaged in a "wholesale discounting of the facts raised by [Sherman]." BRIEF OF APPELLANT, at 36. Sherman's argument is specious.

In its summary judgment order, the district court observed that in ascertaining the material facts in the record, it had to consider "Sherman's 248 proposed additional facts." App. at 804, R.Doc. 68, at 2 n.1. *Cf.* W.D. MO. LOC. R. 56.1(b) (allowing a party opposing a motion for summary judgment to "add a <u>concise</u> listing of material facts" [*emphasis added*]). In addressing those multitude of factual contentions, the district court specifically noted:

> The Court has limited the facts to those that are undisputed and <u>material</u> to the pending summary judgment motion. The Court has excluded legal conclusions, argument presented as fact, and proposed facts not properly supported by the record or admissible evidence. It has also excluded facts proposed by a party that are not subsequently referenced in the party's summary judgment briefing. The Court has included proposed facts that are material and which have been improperly controverted.

App. at 804, R.Doc. 68, at 2 n.1 (*emphasis in original*) (*citations omitted*).

Applying these criteria – which are and have been for many decades an essential

aspect of summary judgment jurisprudences – the district court concluded that it could "not include[] most of Sherman's 248 proposed additional facts because they are either irrelevant, unsupported, based on inadmissible hearsay or inadmissible opinions, or consist of legal conclusions." App. at 804, R.Doc. 68, at 2 n.1

Sherman objects to the district court's approach and apparently is contending that the district court should have included an alleged-fact-by-alleged-fact analysis in its order. But common sense and judicial economy weigh against such a detailed requirement for judicial opinion writing. As noted by one district court:

> [P]laintiff argues that it was error for [the district] court to fail to list every fact he proposed in connection with defendant's motion for summary judgment and explain why certain of the facts were disregarded. . . . It would be an inefficient use of limited judicial resources to require judges to regurgitate each party's proposed facts in full, explaining why some are immaterial and others unsupported by the evidence.

*Lindell v. McCaughtry*, 2003 WL 23192721, at *1 (W.D. Wis. Oct. 27, 2003).

Sherman also purports to cite to six factual findings made by the district court that Sherman confusingly argues were "erroneously found [to be] appropriately controverted." BRIEF OF APPELLANT, at 36. However, Sherman's claims do not hold up under scrutiny with the summary judgment records. Two examples are representative.

In its summary judgment order, the district court included a factual finding:

> Throughout 2019 and into 2020 Frey worked with
> employees in HR, including Denise Smith and Felicia
> Truong, to work through how to address what Frey
> claimed were various performance issues with Sherman.

App. at 807-08, R.Doc. 68, at 5-6. Sherman contends that this fact is

"unsupported." BRIEF OF APPELLANT, at 36-37. Sherman's contention is

ridiculous. In support of this fact, the VA cited the following evidence in the

summary judgment record:

(1)    an email between Ms. Frey and HR on December 27, 2019 [App. 134-36, R.Doc. 55-7, at 1-3],

(2)    emails between Ms. Frey and HR between November 7, 2019 and December 26, 2019 [App. 137-46, R.Doc. 55-8, at 1-10],

(3)    an email between Ms. Frey and HR on January 7, 2020 [pp. 147-51, R.Doc. 55-9, at 1-5],

(4)    emails between Ms. Frey and HR on February 21, 2020 [App. 152-56, R.Doc. 55-10, at 1-5], and

(5)    emails between Ms. Frey and HR between May 1-6, 2020 [App. at 157-59, R.Doc. 55-11, at 1-3]. [14]

---

[14]    Without citation to any case or any part of the summary judgment record, Sherman baldly proclaims that since Ms. Frey never wrote her up or disciplined her for her performance deficiencies, "the inference can be drawn that Ms. Frey was 'papering' the file as retaliation." BRIEF OF APPELLANT, at 37. Sherman's "argument" requires a convoluted speculative leap-in-the-dark and is not a reasonable inference. *Cf. Mayorga v. Marsden Bldg. Maint. LLC*, 55 F.4th 1155, 1162 (8th Cir. 2022) ("Reasonable inferences are those that can be drawn from the evidence without resort to speculation.").

In its summary judgment order, the district court additionally included factual findings that:

> On November 8, 2019, Frey placed Sherman on a 90-day
> Performance Plan for fiscal year 2020. Sherman signed
> the plan indicating her receipt that same day.

App. At 807, R.Doc. 68, at 5. The district court's findings were based on alleged facts set out in the VA's summary judgment motion. App. at 71, R.Doc. 55, at 12. And those alleged facts, moreover, cited to the actual "Performance Plan for FY 2020" signed by Ms. Frey and Sherman. App. at 162-67, R.Doc. 55-13, at 1-6.

Nonetheless, according to Sherman, the district court somehow erred in including these facts in its order, arguing:

> [The district court] found that Sherman was placed on a
> Performance Improvement plan. That was also not true.
> The Performance Plan identified by the defendants is a
> goal setting plan, not what is generally referred to as a
> PIP designed to improve an employee's performance
> prior to receiving a failing performance review.

BRIEF OF APPELLANT, at 39. Sherman completely misstates the district court's order. The district court never found that the Performance Plan at issue was the same as a Performance Improvement Plan. Indeed, the closest the district court came to such any discussion about the Performance Plan and needed improvement in Sherman's work was in quoting from Ms. Frey's performance evaluation of Sherman on January 30, 2020 that concluded Sherman was "unsuccessful."

> On January 31, 2020, Sherman was given an
> unsuccessful performance appraisal. In her notes
> describing the rating, Frey wrote: "Ms. Sherman has not
> met any standard for her performance plan. She has been
> in OCC for 14 months and has not been able to maintain
> the leadership skills necessary to be successful in her
> role. Ms. Sherman received her progress review and
> refused to discuss ways to improve her performance. No
> improvement has been observed."

App. at 807-08, R.Doc. 68, at 5-6.

None of the factual matters identified by Sherman in her BRIEF OF APPELLANT were improperly included in the summary judgment order by the district court. Sherman has not established that the district court applied the improper standard to assessing summary judgment. Further, Sherman has not shown that the district committed any error in its assessment and formulation of the uncontroverted material facts underlying the summary judgment order.

## B. The district court ruled properly and did not err in granting the VA's motion for summary judgment.

In her COMPLAINT filed with the district court, Sherman asserted

employment discrimination claims encompassing four counts, to wit: disparate

treatment based on race discrimination [Count I], a hostile work environment

based on race/color [Count II], disparate treatment based on retaliation [Count III],

and constructive discharge [Count IV]. In its order granting summary judgment,

the district court addressed the above-referenced claims[15] raised in Sherman's

COMPLAINT and entered a final judgment thereafter. In this BRIEF FOR APPELLEE,

the VA will address the district court's rulings in the same order addressed by the

district court.

---

[15] Sherman's COMPLAINT also purported to include claims for disparate treatment based on sex discrimination [Count I] and a hostile work environment based on national origin [Count II]. However, neither of those claims was raised by Sherman in either of her two administrative complaints filed with the VA [App. at 110, R.Doc. 55-2, at 1; App. at 118-20, R.Doc. 55-3, at 1-3]. *Cf. Weatherly v. Ford Motor Co.*, 994 F.3d 940, 944 (8th Cir. 2021) ("[T]hough we construe administrative charges liberally, we will not invent, *ex nihilo*, a claim that was not made before the relevant agency."). Moreover, Sherman did not make affirmative arguments in favor of these claims in her summary judgment filings before the district court [App. at 194-256, R.Doc. 61, at 1-63]. *Cf. Bennett v. Nucor Corp.*, 656 F.3d 802, 821 n.3 (8th Cir. 2011) (declining to consider any argument "not raised in opposition to summary judgment in the district court"). Finally, Sherman's opening BRIEF OF APPELLANT filed with this Court makes no arguments regarding those claims. *Cf. Far E. Aluminium Works Co. v. Viracon, Inc.*, 27 F.4th 1361, 1367 n.2 (8th Cir. 2022) (claims are waived where they are not meaningfully addressed in an opening appellate brief). In light of the foregoing, this BRIEF FOR APPELLEE will not address any of Sherman's purported claims based on either sex discrimination or national origin discrimination.

1. **The district court ruled properly and did not err in granting summary judgment to the VA on Sherman's claim of a constructive discharge in that:**

   a. **Sherman failed to exhaust administrative remedies for a constructive discharge claim**

With her COMPLAINT in the district court, Sherman sought to bring employment discrimination and retaliation claims against the VA pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-16 ("Title VII"). To pursue such discrimination claims in district court, a federal employee must first exhaust all available administrative remedies. *Watson v. O'Neill*, 365 F.3d 609, 614 (8th Cir. 2004). Federal regulations [29 C.F.R. §§ 1614.104-1614.110] delineate the requirements for exhausting administrative remedies for federal employment discrimination litigation, including both an "informal" and a "formal" stage of administrative consideration.

Specifically, the regulations <u>require</u> an aggrieved claimant initially to contact a designated counselor employed by the subject government agency within 45 days of an alleged discriminatory action(s) to attempt informal resolution. 29 C.F.R § 1614.105(a)(1). If the claimant does not resolve the complaint through counseling and wishes to further pursue the matter, the claimant <u>must</u> file a formal complaint of discrimination after receiving written notice of the claimant's right to file a formal complaint. 29 C.F.R § 1614.106(b).

In this case, Sherman's claims before the district court arise out of two formal administrative complaints of discrimination – one filed on February 28, 2020 and another filed on December 2, 2020. In neither administrative complaint does Sherman make any claim to a constructive discharge.

As noted by this Court, "[a] constructive discharge is a discrete act of discrimination or retaliation." *Henson v. Union Pac. R.R. Co.*, *supra*, 3 F.4th at 1081. To that end, the Supreme Court has held that "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S.Ct. 2061, 2072 (2002). Nonetheless, this Court has long recognized a "judicial exception to the exhaustion doctrine." *Wedow v. City of Kansas City, Mo.*, 442 F.3d 661, 672-73 (8th Cir. 2006). In its earliest incarnation, the exception provided:

> When suit may be brought on an administrative charge challenging related employer actions, the purposes of the statutory exhaustion requirement are not furthered through additional administrative filings because "once the [agency] has tried to achieve a consensual resolution of the complaint, and the discrimination continues, there is minimal likelihood that further conciliation will succeed." A plaintiff will be deemed to have exhausted administrative remedies if the allegations of the judicial complaint are like or reasonably related to the administrative charges that were timely brought.

*Anderson v. Block*, 807 F.2d 145, 148 (8th Cir. 1986).

However, following the *Morgan* decision, this Court "considerably narrowed" its application of the judicial exception. *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 852 (8th Cir. 2012). In general, in this Circuit:

> The exhaustion requirement may be satisfied if the civil claim grows out of or is like or reasonably related to the substance of the allegations in the administrative charge, but the civil suit can be only as broad as the scope of any investigation that reasonably could have been expected to result from the initial charge of discrimination.

*Slayden v. Ctr. for Behav. Med.*, 53 F.4th 464, 468 (8th Cir. 2022).

Applying this test to the facts of this appeal, it is evident that the district court properly found Sherman did not exhaust any claim of constructive discharge. The essence of both of Sherman's administrative complaints was her combative and difficult relationship with Angela Frey. However, Sherman's decision to retire from the VA on September 30, 2021, came over a year after she received a promotion from the VA and was no longer working under or with Ms. Frey. More to the point, Sherman's retirement decision occurred after the VA had completed its investigation into Sherman's two discrimination complaints. Put bluntly, the VA's investigation into Sherman's allegations – as a matter of simple common sense – could not have reasonably been expected to include an examination of whether Sherman's workplace was intolerable.

Prior decisions by this Court support the district court's ruling. For example, in *Slayden*, the Court concluded that an employee's claim of constructive discharge was not exhausted where the employee's administrative "charge gave no indication that he was about to be constructively discharged, and [the employee] did not resign . . . until approximately five months after he filed his charge." *Id*. at 469. Similarly, in *Henson*, this Court concluded that an employee's constructive discharge claim was not exhausted nor saved by the judicial exception to exhaustion, noting:

> [The employee's] constructive discharge claim is not reasonably related to his charge allegations. [The employee] did not assert in his charge that he had been or was about to be constructively discharged. . . . [The employee's] alleged constructive discharge did not occur until approximately nine months after his charge had been filed.

*Henson*, 3 F.4th at 1081.

In this case, the district court found that "Sherman made no claim of constructive discharge, or anything reasonably related to constructive discharge, during the administrative process." App. at 813, R.Doc. 68, at 11. Given that finding and this Court's precedents, the district court properly granted summary judgment in favor of the VA on Sherman's claim of a constructive discharge for a failure to exhaust administrative remedies.

### b. Alternatively, the summary judgment record does not establish a legally viable claim of a constructive discharge

In its summary judgment order, the district court alternatively concluded that even if Sherman's constructive discharge claim was not subject to dismissal for lack of exhaustion, the claim was still appropriate for summary judgment because the record failed to establish a viable claim of constructive discharge under this Court's precedents. The district court may be affirmed on this alternative holding.

To establish a *prima facie* case of constructive discharge, a plaintiff had to show that:

(1)  a reasonable person in the plaintiff's situation would find the working conditions intolerable,

(2)  the employer intended to force the plaintiff to quit.

*Carpenter v. Con-Way Central Express, Inc.*, 481 F.3d 611, 616 (8th Cir. 2007). *See also Green v. Brennan*, 578 U.S. 547, 555, 136 S.Ct. 1769, 1777 (2016) ("A plaintiff must prove first that he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign."). When an "employee resigns in the face of such circumstances, Title VII treats that resignation as tantamount to an actual discharge." *Id*. at 555, 136 S.Ct. at 1776-77.

However, an aggrieved plaintiff asserting a claim of constructive discharge "shoulders a substantial burden." *Blake v. MJ Optical, Inc.*, 870 F.3d 820, 826 (8th Cir. 2017). *See also O'Brien v. Dept. of Agriculture*, 532 F.3d 805, 810-11 (8th Cir. 2008) ("[T]he bar is quite high in [constructive discharge] cases [in that] "conditions must be 'sufficiently extraordinary and egregious.'"). In addition to looking at an employer's conduct and intent, a plaintiff must also show that she afforded her employer a reasonable opportunity to correct the intolerable condition before she terminated her employment. *Id*.

> If an employee quits without giving the employer a reasonable chance to resolve his claim, there has been no constructive discharge.

*Cosby v. Steak N Shake*, 804 F.3d 1242, 1246 (8th Cir. 2015). And an employee has an "obligation not to assume the worst, and not to jump to conclusions too fast." *Alvarez v. Des Moines Bolt Supply*, 626 F.3d 410, 419 (8th Cir. 2010).

In this case, the district court properly found that the summary judgment record did not support a finding of a *prima facie* case of constructive discharge.

> Sherman took a new position at the [VA] as inventory manager in August 2020. As inventory manager she changed supervisors. . . Sherman acknowledges these individuals advocated for her and treated her well. She worked in this position without issue until her retirement in September 2021, and there is no evidence that anything related to the position or her supervisors while she worked as inventory manager created an intolerable situation such that she was forced to leave the KCVA.

App. at 814, R.Doc. 68, at 12.  Based on these findings, the district court easily concluded that "[t]here is nothing here indicating that a reasonable person in Sherman's position would have found her working environment intolerable at the time she retired."  App. at 814, R.Doc. 68, at 12.

Moreover, the district court's ruling on the insufficiency of Sherman's hostile work environment claim also supports affirmance of the constructive discharge ruling.  Often plaintiffs asserting constructive discharge claims rely on a culmination of employment actions – the identical actions alleged to constitute a hostile work environment. Such was the case with Sherman.  Such "dual" claims are referred to as "compound claims" and as articulated by the Supreme Court:

> [A] constructive discharge . . . can be regarded as an aggravated case of sexual harassment or hostile work environment. . . . A hostile-environment constructive discharge claim entails something more: A plaintiff who advances such a compound claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign.

*Pennsylvania State Police v. Suders*, 542 U.S. 129, 146-47, 124 S.Ct. 2342, 2354 (2004).  When a plaintiff relies on the same evidence to support both hostile work environment and constructive discharge claims, this Court has noted a finding that the plaintiff's allegations were "insufficient to establish a hostile work environment" also means that "her [constructive discharge] claim fails." *Wilkie v. Dept. of Health & Human Servs.*, 638 F.3d 944, 954 (8th Cir. 2011).

**2.    The district court ruled properly and did not err in granting summary judgment to the VA on Sherman's claims of alleged discrete employment acts of race discrimination and retaliation in that:**

**a.    The summary judgment record fails to establish a *prima facie* case of either race discrimination or retaliation**

As noted by the district court, in her response to summary judgment, Sherman identified three discrete employment actions of the VA that Sherman contends were the result of purported race discrimination and retaliation, to wit:

(1)    Sherman's assertion that she was "set up" for a termination by not being trained on the implementation of the VA Mission Act and then being criticized for lacking the required knowledge base,

(2)    the VA's failure to follow policy following Sherman's receipt of an "unsuccessful" performance review, and

(3)    Sherman's contention that Ms. Frey interfered with her attempt to secure a new position with at a Florida VA facility.
.

App. at 815, R.Doc. 68, at 13.  Analyzing these contentions, the district court properly concluded that Sherman's discrete employment act claims did not survive summary judgment because Sherman did not establish a *prima facie* case of discrimination or retaliation.

Because Sherman produced no direct evidence of race discrimination[16] or retaliation, the efficacy of Sherman's discrete claims was properly examined by the district court utilizing the burden-shifting analysis articulated in the seminal case of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-05, 93 S.Ct. 1817 (1973). Applying *McDonnell Douglas*, Sherman bore the initial burden of establishing *prima facie* cases of discrimination and retaliation. *Heisler v. Nationwide Mut. Ins. Co.*, *supra*, 931 F.3d at 794. If Sherman established *prima facie* cases, then the burden shifted to the VA to articulate legitimate reasons for its actions. *Id*. Once the VA articulated its reasons, however, the burden shifted back to Sherman to show that the reasons were "merely a pretext for discrimination or retaliation." *Id*. But "[d]espite this shifting of the burden of production, 'the plaintiff at all times [bears] the ultimate burden of persuasion.'" *Id.* (*quoting*, *in part*, *St. Mary's Hon. Ctr. v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 2749 (1993).

---

[16]     Sherman did allege that, at some point in time, she was verbally attacked by white nursing staff with the VA and was accused of pitting "her people" against them. App. at 816-17, R.Doc. 68, at 14-15. However, Sherman clarified that the phrase "her people" referred to MSAs (as opposed to nurses) and was not a race-based comment. App. at 816-17, R.Doc. 68, at 14-15.  In addition, Sherman alleged that on one occasion, Ms. Frey told Sherman that she "did not like the way she talked."  App. at 816-17, R.Doc. 68, at 14-15.  The district court reviewed the circumstances surrounding this incident and concluded that the comment was "facially neutral and not evidence of race-based commentary or hostility."  App. at 816-17, R.Doc. 68, at 14-15 (*citing Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 934 (8th Cir. 2006) (affirming that a court cannot extrapolate racial animus from a facially neutral phrase such as "you don't know your place")).

As noted by the district court, the *prima facie* cases for race and/or color discrimination and retaliation are all well-settled. Thus, with respect to any claim of race or color discrimination, to initially shift the burden to the VA under *McDonnell Douglas*, Sherman was required to establish:

(1)     she was a member of a protected group,

(2)     she was meeting the legitimate expectations of her job duties,

(3)     she suffered an adverse employment action, and

(4)     the circumstances give rise to an inference of discrimination.

*Johnson v. Westinghouse Air Brake Techs. Corp.*, 104 F.4th 674, 677 (8th Cir. 2024).  Similarly, with regard to her claim of retaliation, Sherman needed to establish:

(1)     she engaged in protected conduct;

(2)     the employer took an action that a reasonable employee would have found materially adverse; and

(3)     the materially adverse action was causally linked to her protected conduct.

*Parker v. United States Dept. of Agric.*, 129 F.4th 1104, 1114 (8th Cir. 2025).  In this case, as discussed below, the district court properly concluded that Sherman's discrete claims of discrimination and retaliation did not survive scrutiny under *McDonnell Douglas* because she could not establish *prima facie* cases.

The district court determined, in part, that Sherman's discrete claims did not meet the requirements of a *prima facie* case of discrimination or retaliation because Sherman failed to establish an adverse employment action. App. at 816, R.Doc. 68, at 14. In the BRIEF OF APPELLANT, at 42-43, Sherman a argues that the district court erred because it did not utilize the standard articulated in *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 144 S.Ct. 967 (2024). In *Muldrow*, the Supreme Court considered the standard for an "adverse employment action" in the pleading requirements for discrimination cases and concluded that this Court's previous articulation of the legal standard was too narrow. As summarized by this Court:

> An adverse employment action is a disadvantageous change to the compensation, terms, conditions, or privileges of employment. The Supreme Court recently obviated the requirement - replete in our case law - that the claimed injury be 'significant,' 'material,' or 'serious.' After *Muldrow*, a [plaintiff] is only required to plead[17] "some harm respecting an identifiable term or condition of employment."

*Cole v. Grp. Health Plan, Inc.*, 105 F.4th 1110, 1114 (8th Cir. 2024).

---

[17] As noted in *Cole*, the decision in *Muldrow* (and in *Cole* itself) examined the pleading requirements for asserting a viable employment discrimination claim under FED. R. CIV. P. 12(b)(6). Neither case addressed the evidentiary showing necessary to survive scrutiny under *McDonnell Douglas* at the summary judgment stage. Nonetheless, the VA will assume that *Muldrow* impacts the analysis of an "adverse employment action" in considering the propriety of a grant of summary judgment and, to survive such a motion, the summary judgment record must establish "some harm" resulting in "a disadvantageous change to the compensation, terms, conditions, or privileges of employment."

While case law applying *Muldrow* at the summary judgment stage is still developing, it is clear that the Muldrow test applies only to discrimination claims and not to retaliation claims. To that end, the standard for an adverse employment action in a retaliation case is higher than the standard set out in *Muldrow*.

In *Muldrow*, the Supreme Court specifically noted how discrimination claims differ from retaliation claims. *Muldrow*, 601 U.S. at 357-58, 144 S.Ct. at 976. Under the retaliation provisions of the employment discrimination laws, an employer is prohibited from taking adverse action against an employee for bringing or aiding a Title VII charge. Citing to its decision in *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405 (2006), the Court found that the retaliation provision applies only when an alleged retaliatory action is "materially adverse," meaning that it causes "significant" harm. *Muldrow*, 601 U.S. at 357-58, 144 S.Ct. at 976.

The defendant in *Muldrow* suggested that the Court also apply the *White* retaliation standard to discrimination cases. *Id.* The Court explicitly rejected the suggestion, noting that *White* adopted the "materially adverse" standard for reasons peculiar to the retaliation context. *Id.* at 357, 144 S.Ct. at 976. Specifically, the *White* test is meant to capture only those discrete employer actions serious enough to "'dissuade[ ] a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (*quoting White*, 548 U.S. at 68, 126 S.Ct. at 2415).

In light of the reasoning in *Muldrow* (and *White*), it is apparent that the standard for an adverse employment action in the context of a retaliation is higher (*i.e.*, requires a showing of materiality and/or significance). As such, a proper finding that a plaintiff fails to meet the *Muldrow* standard for an adverse employment action for discrete discrimination claims (*i.e.*, "no harm") necessarily forecloses a finding of an adverse employment action with regard to an allegation of retaliation arising from those same acts.

Sherman contends that the district court erred in concluding that she failed to establish an adverse action because she "established sufficient harm to support her claims under *Muldrow*." BRIEF OF APPELLANT, at 42. Sherman's bald contention largely misunderstands the district court's decision. The district court rejected Sherman's alleged adverse employment actions not because she suffered no material harm, but because failed to establish in the summary judgment record that the "adverse actions" even occurred. For example, as to Sherman's allegation regarding a lack of training, the district court noted that Sherman's allegations regarding the claim were "so vague, conclusory, and unsupported that the Court cannot consider them." App. at 816, R.Doc. 68, at 14. *Cf. Sessler v. City of Davenport, Iowa*, 102 F.4th 876, 883 (8th Cir. 2024) ("if a nonmoving party who has the burden of persuasion at trial does not present sufficient evidence as to any element of the cause of action, then summary judgment is appropriate.").

Similarly, in considering Sherman's claim that Ms. Frey interfered with Sherman's attempt to obtain employment with a VA facility in Florida, the district court found that Sherman's claim was "based upon a dizzying amount of inadmissible hearsay." App. at 816, R.Doc. 68, at 14 n.9.[18] *Cf. Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 817 (8th Cir. 2010) ("inadmissible hearsay evidence cannot be used to defeat summary judgment").

As for the third adverse employment action identified by Sherman – the "unsuccessful" performance evaluation – the district court properly noted that Sherman was not claiming the evaluation itself was discriminatory or retaliatory, but rather the VA's actions in response to the evaluation violated VA policy. As described by Sherman in her brief with the Court:

> Ms. Sherman was in violation of policy given a failing performance review. In the [VA], a failing performance review requires reassignment, demotion, or removal. Ms. Sherman was stripped of her supervisory duties and reassigned.

BRIEF OF APPELLANT, at 43.

---

[18] According to Sherman, she interviewed for a position in Florida but, following a second interview, "did not hear anything more." App. at 816, R.Doc. 68, at 14 n.9. At some later point, Sherman spoke on the telephone with a VA employee she identified only as "Tracy." App. at 816, R.Doc. 68, at 14 n.9. According to Sherman, "Tracy" told "well they [undefined] told me that Angela [Frey] said, you know, she started telling me Angela said that that's really not true and that she's your supervisor." App. at 816, R.Doc. 68, at 14 n.9. Sherman stated that "Tracy" believed this led the Florida officials to question Sherman's trustworthiness. App. at 816, R.Doc. 68, at 14 n.9.

Sherman's argument is, at best, confusing. She repeatedly notes that the VA's policy required a "reassignment, demotion, or removal" but then asserts that the VA violated its policy when it reassigned Sherman. Moreover, as noted by the district court, "the records shows Sherman was not detailed out because of her poor performance, but because a fact-finding investigation had been initiated into her alleged misconduct, the misconduct being her failure to communicate with her supervisor." App. at 816, R.Doc. 68, at 14. Consequently, Sherman's claimed "adverse" employment action appears to be that the VA violated its policies when it gave Sherman an "unsuccessful" evaluation and then did not reassign, demote, or remove Sherman because of the evaluation. Forbearance, benevolence, and leniency by an employer are diametrically the opposite of an adverse action.

Although not framed as such by Sherman, the VA will assume that the adverse employment action being objected to by Sherman is either receipt of an unsuccessful evaluation or her temporary detail pending the fact-finding investigation. Even such a generous reading of Sherman's allegation, however, does not disclose reversible error.

As this Court has often explained, negative performance evaluations can arise to an adverse employment action when those evaluations are used to support serious and consequential actions against the employee.

> Standing alone, a poor performance rating does not constitute an adverse employment action because it has no tangible effect on the employee's conditions of employment. An unfavorable evaluation is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment.

*Wilson v. Miller*, 821 F.3d 963, 968 (8th Cir. 2016). While *Muldrow* eliminated the requirement that a "tangible effect" required a material change, the post-*Muldrow* law still requires that a "tangible effect" must cause "some harm respecting an identifiable term or condition of employment." In this case, Sherman has not established <u>any harm</u> arising from the "unsuccessful" evaluation.

With regard to Sherman's detail pending an internal investigation, the summary judgment record established that Sherman lost no title, pay or benefits while she in the temporary detail. Such evidence defeats any argument that the detail was "materially adverse" to Sherman so as to support a *prima facie* claim of retaliation as enunciated in *White*. *Parker*, 129 F.4th at 1114. However, the VA would concede that it is a closer call as to whether the detail caused "some harm" to Sherman so as to support a *prima facie* case of discrimination as enunciated in *Muldrow*. But even assuming that Sherman did identify the detail assignment as an adverse employment action and assuming that such an action cause her "some harm respecting an identifiable term or condition of employment," Sherman has not shown the detail assignment was causally related to her race.

Under <u>all</u> the theories of actionable workplace discrimination/retaliation, to establish a *prima facie* case, Sherman was required to establish that disputed VA actions were causally related to her race and/or her color and/or her participation in EEO protected activity.  Based on the summary judgment record, the district court correctly found that Sherman could not meet this standard for any discrete claims.

In its summary judgment ruling, the district court noted that the causative element under *McDonnell Douglas* is "typically" shown by evidence demonstrating:

(1)     similarly situated individuals were treated differently than the plaintiff, or

(2)     the employer failed to follow its policies, or

(3)     the employer's shifted its explanation of the employment decision.

App. at 816, R.Doc. 68, at 14 (*citing Grant v. City of Blythesville, Ark.*, 841 F.3d 767, 774 (8th Cir. 2016)).  To that end, the district court bluntly concluded: "Sherman has not done any of this."  App. at 816, R.Doc. 14.

> [Sherman] identified no specific similarly situated employees who were treated more favorably. . . . Nor is there evidence of failure to follow policies or shifting explanations of any decision making by supervisors at the [VA].  IN short, there is insufficient evidence that [the VA's] treatment of Sherman was motivated by racial discrimination or to retaliate.

App. at 817, R.Doc. 68, at 15.

In her briefing with this Court, Sherman attempts to remediate her evidentiary deficiencies by engaging in her own discriminatory rhetoric (without any citations to the summary judgment record):

> [Ms. Frey] treated Ms. Sherman as if she were dumb – talking down to and in front of others. She treated Ms. Sherman as if she were a "little black girl" and an angry black woman. All of these are racial stereotypes.

BRIEF OF APPELLANT, at 47.[19] In support of her argument, Sherman cites *Jones v. Cargill, Inc.*, 490 F.Supp.2d 978, 982 (N.D. Iowa 2007) for the proposition that "evidence that a decisionmaker believes in racial stereotypes makes it more likely that race played a part in defendant's decision making." BRIEF OF APPELLANT, at 47. But the citation only emphasizes the fact that Sherman produced no evidence that <u>Ms. Frey</u> believed in these stereotypes, much less that she acted upon them.

---

[19] *Jones* was not a summary judgment case but instead involved motions *in limine* and the court's discussion of racial stereotyping is illuminating:

> There is little evidence in the record that any of the decisionmakers in this case believe in any racial stereotypes. Therefore, the court shall exclude any general evidence relating to racial stereotypes of African-Americans that members of other racial or ethnic groups might believe. That said, the court shall permit Plaintiff to conduct a limited inquiry on the issue of racial stereotypes. Plaintiff may ask those employees who were decisionmakers in Plaintiff's termination whether they believe in racial stereotypes of African–Americans.

*Id*. at 988.

Rather than point to actual evidence that Ms. Frey was acting on some deep-seeded racial animus, Sherman instead relies merely on the vague observations of other employees (themselves suing the VA) that Ms. Frey treated Sherman "differently than Caucasian employees." Pointing to these unsubstantiated opinions, Sherman simply flatly proclaims "these establish that the adverse actions taken against Sherman were racially motivated." BRIEF OF APPELLANT, at 47. Sherman is wildly mistaken – both as to the "quality" of her evidence and as to her evidentiary burden. *Cf. Macklin v. FMC Transp., Inc*., 815 F.3d 425, 429 (8th Cir. 2016) ("to survive summary judgment, [a plaintiff] is required to identify <u>specific facts</u> from which, if proven, a reasonable fact finder could infer unlawful discrimination" [*emphasis added*]).

The district court properly concluded that any discrimination or retaliation claims being asserted by Sherman for discrete employment actions taken by the VA failed to get past the prima facie stage of the *McDonnell Douglas* framework.

### b. Alternatively, the summary judgment record fails to establish a trialworthy issue of pretext.[20]

With regard to Sherman's potential discrete employment action claim for her detail, the VA offered legitimate, nondiscriminatory reason for its decision – it was a common practice at the VA to place an employee on a detail when they were being investigated for misconduct in their work unit.[21] Thus, even if Sherman's detail claim could survive the *prima facie* analysis discussed *supra*, in light of the VA's legitimate, nondiscriminatory reasons for its action, under *McDonnell Douglas*, the burden would have shifted back to Sherman to establish a trialworthy issue of pretext in order to avoid entry of summary judgment.

This Court has explained what a plaintiff must do to show that proffered justifications are mere pretext to hide illegal discrimination and retaliation:

---

[20]    In its summary judgment motion, the VA argued that even if Sherman could establish a viable *prima facie* case of discrimination and/or retaliation, she could not create a trialworthy issue of pretext. Because the district court concluded that Sherman could not establish any *prima facie* case, the court did not address the VA's pretext argument. However, it is well-settled that this Court "may affirm on any basis supported by the record." *Collins v. Metro. Life Ins. Co.*, 117 F.4th 1010, 1015 (8th Cir. 2024).

[21]    "The burden to articulate a nondiscriminatory justification is not onerous, and the explanation need not be demonstrated by a preponderance of the evidence." *Nelson v. Lake Elmo Bank*, 75 F.4th 932, 938 (8th Cir. 2023) (*quoting Floyd v. State of Mo. Dept. of Soc. Servs., Div. of Family Servs.*, 188 F.3d 932, 936 (8th Cir. 1999)).

> To demonstrate pretext, a plaintiff must present sufficient evidence to demonstrate both that the employer's articulated reason for the adverse employment action was false and that discrimination was the real reason . . . . [T]he plaintiff must do more than simply create a factual dispute as to the issue of pretext; [he] must offer sufficient evidence for a reasonable trier of fact to infer discrimination.

*Lors v. Dean,* 595 F.3d 831, 834 (8th Cir. 2010). More specifically, a plaintiff "must demonstrate that a discriminatory animus lies behind the defendants' neutral explanations." *McNary v. Schreiber Foods, Inc.,* 535 F.3d 765, 769 (8th Cir. 2008). Thus, "[t]o prove pretext, the employee must do more than show that the employment action was ill-advised or unwise, rather [the employee] must show that the employer has offered a 'phony excuse.'" *Id.*

> A proffered legitimate, non-discriminatory reason for [an adverse employment action] need not, in the end, be correct[22] if the employer honestly believed the asserted grounds at the time of the [action].

---

[22]    As to the VA's actions, "employers have wide latitude to make business decisions." *Lacroix v. Sears, Roebuck, and Co.*, 240 F.3d 688, 692 (8th Cir. 2001).

> The discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination or retaliation.

*Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 976 (8th Cir. 2012).

*Id.* A court may properly grant summary judgment if a plaintiff fails to show that there is a genuine issue of material fact as to whether the employer's proffered justification was a pretext for an illegal discriminatory or retaliatory motive. *McNary*, 535 F.3d at 769.

In this case, Sherman failed to come forward with any "significant probative evidence" indicating that the reason put forward by the VA was mere cover to hide illegal discrimination. *Cf. Buettner v. Arch Coal Sales, Inc.*, 216 F.3d 707, 718 (8th Cir. 2000) ("A plaintiff [in an employment discrimination case] facing a summary judgment motion cannot get to a jury without any significant probative evidence tending to support the complaint."). Sherman may subjectively "feel" or "believe" that the action of the VA was illegal discrimination. However, with regard to such personal feelings, no matter how subjectively honest, they plainly cannot establish a case of pretext. *Cf. Torgerson v. City of Rochester*, *supra*, 643 F.3d at 1050.

Given the utter absence of any significant probative evidence indicating that the reason put forward by the VA was mere cover to hide illegal discrimination, the district court's summary judgment ruling – and the ensuing final judgment – may be affirmed on the ground that Sherman failed to establish a trialworthy issue of pretext even if Sherman had otherwise established a *prima facie* case of discrimination and/or retaliation.

### 3. The district court ruled properly and did not err in granting summary judgment to the VA on Sherman's claims of a harassment inasmuch as the summary judgment record fails to establish an objectively hostile work environment.

Turning finally to Sherman's hostile work environment claim, the district court noted that Sherman simply failed to produce sufficient evidence. App. at 817, R.Doc. 68, at 15.

> Sherman claims that at times she was subjected to offensive comments based on her race. But the few comments she cites – such as her claim [Ms.] Frey told her she liked cream in her coffee or coffee in her cream – fall far, far short of creating a hostile working environment under Eighth Circuit caselaw. Sherman's claims that she was unfairly criticized, called out in meetings, and escorted out of the office in a demeaning fashion when she was detailed out of the OCC are similarly insufficient. Indeed, there does not appear to be a causal nexus between Sherman's race and the "harassment." What appears to be happening here is, at worst, a garden-variety example of a manager disliking an employee, nothing based on racial animus. And it is well-settled that, "[h]ostile treatment by a manager based on employee conduct and not motivated by any protected characteristic or conduct, even if unreasonable, does not amount to legally actionable type of discrimination."

App. at 818, R.Doc. 68, at 16 (*quoting*, *in part*, *Heisler v. Nationwide Mut. Ins. Co.*, *supra*, 931 F.3d at 796). After examining these narrow allegations of harassment that found some evidentiary support in the record, the district court correctly found that Sherman's contentions fell significantly short of the requirements for a hostile work environment.

In this Circuit, in order to establish an actionable harassment claim that can survive summary judgment, Sherman was required to establish:

(1)     she was a member of a protected class,

(2)     she was subject to unwelcome harassment,

(3)     the harassment resulted from membership in the protected class, and

(4)     the harassment was severe enough to affect the terms, conditions, or privileges of employment.

*Mahler v. First Dakota Title Ltd. P'ship*, 931 F.3d 799, 806 (8th Cir. 2019).

With regard to the required severity or pervasiveness of alleged harassment, courts analyze the offending conduct under <u>both</u> a subjective and an objective test. *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016).  As it did before the district court, the VA does not challenge the sincerity of Sherman's subjective feelings.  However, even accepting that Sherman honestly viewed the VA's conduct as hostile or abusive, applying this Court's precedent, the district court properly concluded that Sherman failed to establish that the conduct of the VA was "sufficiently severe or pervasive [so as] to create an environment that a reasonable person would find hostile or abusive and that actually altered the conditions of [Sherman's] employment." *Hales v. Casey's Marketing Co.*, 886 F.3d 730, 735 (8th Cir. 2018).

The law is well-settled that "[h]ostile work environment claims are limited in nature." *Anda v. Wickes Furn. Co.*, 517 F.3d 526, 531 (8th Cir. 2008).

> Hostile work environment harassment occurs when the workplace is <u>permeated</u> with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an <u>abusive</u> working environment.

*Liles v. C.S. McCrossan, Inc.*, 851 F.3d 810, 823 (8th Cir. 2017) (*emphasis added*). As noted by the district court, the evidence in the summary judgment record falls significantly short of this mark.

As addressed in the factual discussion *supra*, in his claim of a hostile work environment, Sherman's <u>evidence</u> – at best – advances a claim of harassment based on scattered workplace events. And simply put, the limited incidents alleged by Sherman fail to demonstrate an objectively hostile work environment. *Cf. Jackman v. Fifth Jud. Dist. Dept. of Corr. Servs*, 728 F.3d 800, 806 (8th Cir. 2013) ("The standard for demonstrating a hostile work environment under Title VII is demanding and does not prohibit all verbal or physical harassment and it is not a general civility code for the American workplace."); *Carpenter v. Con-Way Cent. Exp., Inc.*, *supra*, 481 F.3d 611 at 618 ("Allegations of a few isolated or sporadic incidents will not suffice; rather, the plaintiff must demonstrate the alleged harassment was so intimidating, offensive, or hostile that it poisoned the work environment.").

The summary judgment record in this case simply does not show that the alleged harassing incidents permeated or poisoned the workplace. Ultimately, the district court properly concluded that "there [was] insufficient evidence of a hostile work environment to survive summary judgment." App. at 817, R.Doc. 68, at 15.

Like her claims of discrimination and retaliation based on discrete employment actions, Sherman's claim of a hostile work environment utterly fails to survive basic scrutiny under this Circuit's well-settled law.

# IX. Conclusion

Appellee Douglas A. Collins, in his official capacity as the Secretary of Veterans Affairs, respectfully requests that the Court affirm the final judgment of the district court that was entered on the bases of its prior entry of an order granting summary judgment to the VA.

Respectfully submitted,

Jeffrey P. Ray
Acting United States Attorney

By    */s/ Jeffrey P. Ray*

Jeffrey P. Ray
Acting United States Attorney
Chief, Civil Division
Missouri Bar No. 35632
Eighth Circuit Admission No. 95-0380

Charles Evans Whittaker Courthouse
400 East 9th Street, Room 5510
Kansas City, Missouri 64106
(816) 426-3130
FAX: (816) 426-3165
Jeffrey.Ray@usdoj.gov

ATTORNEYS FOR APPELLEE
DOUGLAS A. COLLINS, IN HIS
OFFICIAL CAPACITY AS SECRETARY
OF VETERANS AFFAIRS

# X. Certificate of compliance

Pursuant to 8TH CIR. R. APP. P. 28A(h)(1)-(3), and FED. R. APP. P. 28(a)(10), 32(a)(5)(a), 32(a)(7)(B)(i), 32(g)(1), the undersigned Acting United States Attorney hereby certifies that the forgoing BRIEF FOR APPELLEE complies with the Court's technical requirements for electronic versions of appellate briefs, including complying with the applicable type-volume limitation in that:

The BRIEF FOR APPELLEE was prepared utilizing the Word application on Microsoft Office 365 software,

The electronic version of the BRIEF FOR APPELLEE is in a single document file, has been scanned for viruses and is virus-free, is in Portable Document Format ("*.pdf*") and has been converted to *.pdf* document from the original Word file using Adobe Acrobat Pro DC software,

The BRIEF FOR APPELLEE contains 12,355 words[23] as verified with the Word application on Microsoft Office 365 software, and

The BRIEF FOR APPELLEE was prepared utilizing 14-point or larger proportionally spaced "Times New Roman" typeface.

*/s/ Jeffrey P. Ray*
Jeffrey P. Ray
Acting United States Attorney

---

[23]     The word count excludes the corporate disclosure statement, table of contents, table of citations, statement with respect to oral argument, and certifications of counsel. FED. R. APP. P. 32(f).

## XI.  Certification of electronic filing of the BRIEF FOR APPELLEE

Pursuant to 8TH CIR. R. APP. P. 28A(a), the undersigned Acting United States Attorney hereby certifies an electronic version of the foregoing BRIEF FOR APPELLEE was filed with Clerk of the Court using the Court's CM/ECF system on this 9th day of May, 2025.

_/s/ Jeffrey P. Ray_
Jeffrey P. Ray
Acting United States Attorney

## XII. Certification of mailing of paper copies of the BRIEF FOR APPELLEE

The undersigned Acting United States Attorney hereby certifies that ten (10) true and correct paper copies the foregoing BRIEF FOR APPELLEE were sent to the office of the Clerk of the Court in compliance with the provisions of FED. R. APP. P. 25(a)(2)(A)(i) and 8TH CIR. R. APP. P. 28A(d), and that one true and correct paper copy of the foregoing BRIEF FOR APPELLEE was placed in the United States first class mail, postage prepaid, addressed to:

Rebecca M. Randles
RANDLES MATA, LLC
851 NW 45th Street, Suite 310
Kansas City, MO 64116

ATTORNEYS FOR APPELLANT
GEORGETTE SHERMAN

on this _____ day of May, 2025.[24]


_____
Jeffrey P. Ray
Acting United States Attorney

---

[24] The mailings of the paper copies of the BRIEF FOR APPELLEE to the appellant and the Clerk of the Court are being completed within five days of the receipt of notice from the Clerk of the Court that the electronic version of the BRIEF FOR APPELLEE has been reviewed and filed. 8TH CIR. R. APP. P. 28A(d).